IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAREY PETTIGREW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-cv-144-MJR |
| ) | |
| OFFICER DAVIS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for a Summary Judgment (Doc. 31), filed by Defendant Davis on November 2, 2006. For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED**, that this case be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

**Procedural History**

Plaintiff Carey Pettigrew, an inmate in the Menard Correctional Center, filed this action on February 28, 2005, alleging deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff Pettigrew alleges that Defendant Davis failed to protect him from injury inflicted on him during a fight with another inmate, in violation of the Eight Amendment's ban on cruel and unusual punishment.

On November 2, 2006, Defendant Davis filed the instant Motion for Summary Judgment, alleging summary judgment is appropriate in his favor because (1) Heck v. Humphrey, 512 U.S. 477 (1994), bars Plaintiff's failure to protect claim, (2) Plaintiff failed to exhaust his administrative

remedies, and (3) the undisputed facts demonstrate that Plaintiff cannot establish the elements of a failure to protect claim.  Defendant Davis also filed, on November 2, 2006, a <u>Faulkner</u> Notice (Doc. 33) advising Plaintiff how to respond to a motion for summary judgment, and warning Plaintiff of the consequences of failing to respond to Defendant's Motion for Summary Judgment.  That notice correctly informed Plaintiff, "Unless you respond to this motion with sworn statements which contradict important facts claimed by the defendant in their sworn materials, the Court will accept the defendant's uncontested facts as true." (Doc. 33 at 3). Despite this notice and warning, Plaintiff failed to respond to Defendant's Motion for Summary Judgment.  The Court, therefore, considers this an admission of the merits of the motion pursuant to SDIL-LR 7.1(c).

**Substantive History**

While Plaintiff was an inmate in the Shawnee Correctional Center, he was housed with an inmate with whom he fought regularly and, on or about May 24, 2004, Plaintiff and his cell mate got into a fight (Doc. 1 at 4).  Defendant Davis is a correctional officer at Shawnee Correctional Center, who, before the fight, was told by Plaintiff that he and his cell mate had been clashing verbally, that it was inevitable that they would fight, and that someone was going to get hurt (Doc. 32-2, at 4).  Defendant Davis told Plaintiff that there was nothing he could do about it because Defendant Davis had notified a Sergeant that Plaintiff wanted to change cells, but the Sergeant would not move Plaintiff.

On May 24, 2004, Plaintiff's cell mate "swung on him" and they started fighting (Doc. 32-2 at 3).  During the fight, Plaintiff's cell mate bit him and choked him, and Plaintiff grabbed his flexible segregation ink pen and struck his cell mate with it (Doc. 1 at 4; Doc. 32-2 at 3).  Plaintiff had injuries from the fight including bruises and abrasions that lasted for two to three weeks (Doc. 32-2 at 10-11).

Plaintiff received a disciplinary report and lost some good time for his involvement in the fight (Doc. 32-2 at 7, 20). The fight also led to Plaintiff's criminal prosecution for aggravated battery on an inmate, to which Plaintiff plead guilty and, pursuant to a plea bargain, was sentenced to two additional years of incarceration (Doc. 32-2 at 7-9).

To initiate this lawsuit, Plaintiff filled out a form complaint that asks certain questions and provides space for a response. Under section three, entitled "Grievance Procedure", Plaintiff responded "Yes" when asked if he presented the facts relating to his complaint in the prisoner grievance procedure (Doc. 1 at 3). He responded, "I wrote a grievance" when asked what steps he took (Doc. 1 at 3). When asked about the result, he responded, "They said I was out of the time line and that the situation could not be addressed further." (Doc. 1 at 3). When asked to either attach copies of his request for an administrative remedy and any response received or explain why he cannot do so, Plaintiff responded, "The facility won't search my property and retrieve the grievance, but I do have the response from Springfield." (Doc. 1 at 4).

Defendant Davis alleges as undisputed material fact that Plaintiff did not fully and properly exhaust his administrative remedies regarding his alleged failure to protect Plaintiff from an assault by his cell mate (Doc. 32 at ¶ 25). In support of this claim, Defendant attached a sworn affidavit of Sherry Benton, the chairperson with the Office of Inmate Issues for the Illinois Department of Corrections. In her affidavit, Sherry Benton explains what grievance procedures are available to inmates in accordance with Department Rule 504F: Grievance Procedures for Committed Persons (Doc. 32-2 at 23). As explained in the affidavit, an inmate must first attempt to resolve a grievance informally through his counselor, and if it remains unresolved, then submit a written grievance on a grievance form to the facility Grievance Officer (Doc. 32-2 at 23). The Grievance officer investigates and reports any findings to the Chief Administrative Officer, who then renders a

decision, which is reported to the inmate (Doc. 32-2 at 23). If the inmate feels the issue is still unresolved after receiving this response, the inmate may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and Chief Administrative Officer's decision (Doc. 32-2 at 23). The Administrative Review Board, as the Director's designee, reviews the appeal, decides whether to hold a hearing, and ultimately issues a written report and recommendation to the Director or Director's designee, who makes a final determination on the grievance, of which a copy is sent to the inmate (Doc. 32-2 at 23). At this point there is no further administrative means for review (Doc. 32-2 at 23).

Sherry Benton states in her affidavit that at the request of the Attorney General's Office, a thorough search of the ARB records was conducted (Doc. 32-2 at 24). She further states, "Department records reflect that Offender Cary Pettigrew, Register No. R26024, has not filed a timely grievance to this office regarding allegations that Officer Davis failed to protect him from his cell mate on or around May 26, 2004, while at the Shawnee Correctional Center." (Doc. 32-2 at 24).

### CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 29

F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  Plair v. E.J. Brach & Sons, Incorporated,105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836.  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994).  See also, Miller,168 F.3d at 312; Plair, 105 F.3d at 347; Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  See also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

**A Heck Bar of Plaintiff's Claims**

Defendant Davis alleges that Heck v. Humphrey, 512 U.S. 477 (1994), bars Plaintiff's failure to protect claim because Plaintiff's allegations challenge the validity of his criminal conviction as well as the prison discipline that was imposed. In *Heck,* the Supreme Court declared the watershed rule that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would , the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Heck*, **512 U.S. at 486-87** (emphasis in original). Because Plaintiff was convicted in his criminal matter arising from the fight with his cell mate, the Court must consider whether a ruling favorable to Plaintiff on his failure to protect claim would necessarily imply the invalidity of his criminal conviction. If so, this case must be dismissed unless Plaintiff's can demonstrate that his conviction has already been invalidated.

Plaintiff alleges that Defendant Davis was deliberately indifferent to Plaintiff's need for protection from his cell mate. In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Id. at 833 (internal citations omitted); see also Luttrell v. Nickel, 129 F.3d 933, 935 (7th Cir. 1997). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. Farmer, 511 U.S. at 834.

In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. Id.; Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety. Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. Sanville v. McCaughtry, 266 F.3d 724, 733-34 (7th Cir. 2001).

In this case, Defendant argues that a Heck bar applies because Plaintiff was criminally convicted of assaulting his cell mate and also received prison discipline or the charge of violent assault for the same incident that is the basis of his failure to protect claim. The argument goes that Plaintiff alleges he was incarcerated under conditions posing a substantial risk of serious harm because his cell mate posed a substantial risk of serious harm due to his assault on Plaintiff. According to Defendant, Plaintiff's allegation that his cell mate assaulted him contradicts the fact that Plaintiff was convicted of assaulting his cell mate for stabbing him with a segregation pen (Doc. 32 at 10).

The Court disagrees. If this Court were to find that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, and that Defendant Davis was deliberately indifferent to that danger, it would not necessarily render his conviction and sentence invalid. Plaintiff's allegation that his cell mate assaulted him does not necessarily contradict the fact that Plaintiff was convicted of assaulting his cell mate for stabbing him with a segregation pen.[1] Defendant's argument appears to assume that if Plaintiff was attacked first, he would have a self-

---

[1] In Plaintiff's deposition, Plaintiff states that he was written up for a violent assault because the ink pen was considered to be a "shank" (Doc. 32-2 at 7).

defense claim that would necessarily invalidate his criminal conviction. However, this may not have been the case, especially considering it appears from Plaintiff's testimony in his deposition that his cell mate lost three months of good time for his involvement in the incident (Doc. 32-2 at 9-10). The designation of Plaintiff's ink pen as a shank would be a possible reason why he was disciplined for the assault. In any case, there are not enough facts alleged in the summary judgment motion for this Court to conclude that if Defendant Davis were found to have been deliberately indifferent to Plaintiff's need for protection from his inmate, it would necessarily invalidate his criminal conviction. Accordingly, Heck does not bar Plaintiff's suit.

**Exhaustion of Administrative Remedies**

Defendant Davis alleges, pursuant to the Prison Litigation Reform Act ("PLRA"), that Plaintiff's action must be dismissed because Plaintiff did not fulfill the PLRA's exhaustion requirement. Plaintiff's status as a prisoner means that his claims are governed by the Prison Reform Litigation Act of 1996. Witzke v. Femal, 376 F.3d 744, 749 (7th Cir. 2004).

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Thus, exhausting available administrative remedies is a precondition of suit. Dale, 376 F.3d at 655; See also Perez v. Wis. Dept. of Corr., 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).

As a state prison inmate, the procedures that Plaintiff should have followed in order to exhaust his administrative remedies are contained in Title 20 of the Illinois Administrative Code at sections 504.800 through 504.870. The code first provides for informal resolution of the problem

through a Counselor. ILL. ADMIN. CODE TIT. 20, §504.810(a) (2005). If the problem is not resolved, the inmate then may file a written grievance within sixty (60) days of the occurrence, which is dealt with by a Grievance Officer on a weekly basis. Id. at §504.810(b). The Grievance Officer then either denies the grievance and returns the documents to the inmate or submits the grievance for investigation and reports findings to the Chief Administrative Officer. Id. at §504.830. The Chief Administrative Officer is generally to provide a response within two months of receipt of the grievance. Id. at 504.830(d). If the issue is not resolved to the inmate's satisfaction, it may then be appealed to the Director within thirty days of receiving a response from the Chief Administrative Officer. Id. at 504.850.

Defendant Davis supports his contention that Plaintiff failed to exhaust his administrative remedies by attaching an affidavit by the Chairperson with the Office of Inmate Issues for the Illinois Department of Corrections, Sherry Benton. Sherry Benton states that she searched the department records, and that these records reflect that Plaintiff had not filed a timely grievance to that office regarding the allegation that Defendant failed to protect him from his cell mate on or about May 26, 2004 (Doc. 32-2 at 25). In other words, the affidavit supports that claim that Plaintiff failed to appeal to the Director within thirty days after a response was received from the grievance officer or warden's decision, as required by. ILL. ADMIN. CODE TIT. 20, §504.850. The Court accepts this fact as true, as Plaintiff has failed to respond to the motion and offer any evidence to the contrary, which the Court considers to be an admission of the merits of Defendant's claim that Plaintiff failed to exhaust his administrative remedies.

The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirements. "A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely

unexhausted." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.")).

Because the undisputed facts show that Plaintiff failed to timely file a grievance with the Administrative Review Board, and Plaintiff has shown no cause for this failure, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED**. In light of this decision, the Court need not address Defendant's third argument in support of its motion.

## CONCLUSION

Therefore, for the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment (Doc. 31) be **GRANTED**, that this case be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 10, 2007**

                                           s/ *Donald G. Wilkerson*
                                           **DONALD G. WILKERSON**
                                           **United States Magistrate Judge**